UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT MITERA,

      Plaintiff,                                                Case No. 20-13327

v.                                                            Honorable Nancy G. Edmunds

ACE CONTROLS, INC.,

      Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT ACE CONTROLS, INC.'S MOTION FOR SUMMARY JUDGMENT [16]**

This is an employment discrimination action brought by Plaintiff Robert Mitera, through counsel, against his employer, Defendant Ace Controls, Inc., for alleged violations of the Americans with Disabilities Act, 104 Stat. 327, 42 U.S.C. § 12112 *et seq.* ("ADA") and unlawful retaliation. Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 16.) Defendant filed its motion on February 3, 2022, making any response from Plaintiff due by February 17, 2022. *See* E.D. Mich. L.R. 7.1(e)(1). To date, Plaintiff has neither filed a response nor contacted the Court regarding a potential extension. Accordingly, the Court will treat the motion as unopposed.[1] Pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided without oral argument.

---

[1] Defendant states that it sought, but did not obtain, concurrence in the motion from Plaintiff before filing. (ECF No. 16, PageID.69.)

1

I.  **Background**

   A.  **Plaintiff's Work Schedule and Requests for Accommodation**

Defendant Ace Controls, Inc. ("Ace") develops and manufactures industrial damping parts. Plaintiff began working for Ace, in quality control inspection, on September 8, 2004. (*Ex. 1 Payroll Change Form*, ECF No. 16-2, PageID.102; *Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.107.) As a quality control inspector, Plaintiff was required to start his shift at 6:00 a.m. (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.117; *2018 Timecard Report*, ECF No. 16-15.)

In January of 2014, Plaintiff was diagnosed with sleep apnea which caused him to complain to his doctor of "loud snoring, frequent awakenings and daytime sleepiness." (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.124; *2015 Exam Record*, ECF No. 16-29.) Plaintiff submitted to Ace a Family and Medical Leave Act ("FMLA") request with regard to his sleep apnea on May 25, 2018. (*May 2018 FMLA Request*, ECF No. 16-16.) Plaintiff states his FMLA request represented his request for an accommodation from Ace. (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.128.) The portion of the FMLA request completed by Plaintiff's physician indicated that, because of "persistent excessive daytime sleepiness . . . [Plaintiff] needs to delay his work start time by 1-2 hrs." (*Id.*) Ace accommodated Plaintiff's request by allowing him to start his shift one hour later, at 7:00 a.m. (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.127.) Time records show that Plaintiff began coming in at 7:00 a.m. on most days beginning in August 2018, although he occasionally came in at the regular start time of 6:00 a.m. (*2018 Timecard Report*, ECF No. 16-15.)

On October 30, 2018, Plaintiff successfully applied for a transfer to a calibration technician position, which is the job he holds today. (*Ex. 2 Pl. Dep.*, ECF No. 16-3,

PageID.108; *Ex. 3 Payroll Change Form*, ECF No. 16-4, PageID.154.) The regular start time for Plaintiff as a calibration technician is 7:00 a.m., the same time Plaintiff had been arriving pursuant to his May 2018 accommodation request and one hour later than the regular start time applicable to Plaintiff's previous position. (ECF No. 16-3, PageID.129.)

After his transfer, time records show that Plaintiff continued to start work at 7:00 a.m. (*2019 Timecard Report*, ECF No. 16-21.) Even though his start time had not changed, on June 13, 2019, Plaintiff again requested a delayed start to his schedule through an FMLA request. (*June 2019 FMLA Request*, ECF No. 16-17.) Plaintiff later submitted a revised request in which his physician added that Plaintiff "may need to delay work start time by 1-2hrs (sic) if he has a bad night[;] cannot start any earlier then (sic) the 7:00 a.m. start time." (*Amended June 2019 FMLA Request*, ECF No. 16-18.) Although Plaintiff's physician dated the amendment June 25, 2019, the fax notations and cover sheet show the revised request was sent to Ace on September 5, 2019. (*Id.*)

Ace initially denied the June 2019 request for a later start time, (*HR Email*, ECF No. 16-20; *Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.117), and on November 15, 2019, Plaintiff received a written warning regarding Ace's attendance policy. (*Written warning*, ECF No. 16-28.) However, after joint discussions with Plaintiff and his physician and receipt of a revised FMLA request in which Plaintiff's physician stated that it was "medically necessary" for Plaintiff to begin his shift at 8:00 a.m., Ace granted Plaintiff's request. (*See October 2019 FMLA Request*, ECF No. 16-22.) Plaintiff was given an approved FMLA reduced work schedule that was effective November 18, 2019. (*2019 Reduced Work Schedule*, ECF No. 16-23.) Per his 2019 reduced work schedule, Plaintiff was scheduled to work Monday through Friday from 8:00 a.m. until 3:30 p.m. (*Id.*) In mid-

3

July 2020, Plaintiff began routinely coming in to work half-an-hour early, at 7:30 a.m. (*2020 Timecard Report*, ECF No. 16-24.)

Plaintiff most recently renewed his request for a reduced schedule in July 2020. (*Designation Notice*, ECF No. 16-25.) Per his 2020 reduced work schedule, Plaintiff worked Monday through Friday from 7:30 a.m. through 3:30 p.m. (*2020 Reduced Work Schedule*, ECF No. 16-26.)

Despite this reduced work schedule, Plaintiff initiated the present lawsuit against Ace on December 18, 2020. (*See Complaint*, ECF No. 1.) In his complaint, Plaintiff alleges that Ace unlawfully refused to accommodate his sleep apnea and harassed and retaliated against him because of his disability. (*Id.*) Subsequent to filing his complaint, on October 1, 2021, Plaintiff requested that Ace once again schedule him for a 7:00 a.m. start time. (*Plaintiff's Email*, ECF No. 16-27.)

### B.     Plaintiff's Allegations Regarding his Work Environment

According to Plaintiff's Complaint, Ace's employees harassed and retaliated against Plaintiff as a direct result of Plaintiff's requests for accommodations. (*Complaint*, ECF No. 1, PageID.3-4.) Plaintiff alleges his coworkers fabricated rumors that Plaintiff hated his job and falsely accused him of damaging shop tools. (*Id.*) Additionally, Plaintiff alleges that he was told to update his resume and begin looking for a new job, and that an employee in Ace's human resources department told him "he should not bother reporting other issues in the future." (*Id.* at PageID.4.)

At his deposition, Plaintiff testified that he was not disciplined for allegedly damaging shop tools and that these accusations had nothing to do with his requests for accommodations due to his sleep apnea. (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.122,

4

132.) Plaintiff further testified that he did not know if the rumors about him were started because of his requests for accommodations.(*Id.* at PageID.133.)

Regarding Plaintiff's allegations about Ace's human resources department and being told to look for a new job, Plaintiff testified that a former human resources manager told him "if [he] didn't like [his] job, to update [his] resume and find another job." (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.149.) This statement was made in response to Plaintiff reporting "something said to [him] in the shop by somebody" but he does not remember any additional details. (*Id.*) Notably, Plaintiff testified that he did not believe this comment was related to his sleep apnea or requests for accommodation. (*Id.* at PageID.134.) Plaintiff did not testify, and the Court was unable to locate, evidence in support of Plaintiff's allegation that he was told not to report issues to human resources in the future.

Plaintiff has presented no additional evidence regarding these alleged incidents and has not responded to Defendant's present motion.

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of evidence supporting one or more essential elements of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968)). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and

5

determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

"Where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *FTC v. EMA Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). Nevertheless, neither the trial nor appellate court is expected to "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 410 (6th Cir. 1992). If a party "fails to properly address [the moving] party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion; [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

### III. Analysis

Plaintiff's two-count complaint alleges that Ace (1) violated the ADA by failing to provide Plaintiff with a reasonable accommodation; and (2) retaliated against Plaintiff for engaging in the protected activity of making an accommodation request. (*Complaint*, ECF No. 1, PageID.4-8.)

#### A. Failure to Accommodate

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to ... [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). According to the Act, discrimination includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified

6

individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). To establish a prima facie failure-to-accommodate claim, Plaintiff must show that (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for his position, with or without reasonable accommodation; (3) Ace knew or had reason to know about his disability; (4) he requested an accommodation; and (5) Ace failed to provide the necessary accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (citing *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015).

Plaintiff's failure to accommodate claim fails because, at a minimum, Plaintiff has presented no evidence to suggest that Ace failed to provide a necessary accommodation.[2] The record before the Court shows that Plaintiff requested a later shift start time as an accommodation on three different occasions and that his request was ultimately granted each time. (*See, e.g.*, *May 2018 FMLA Request*, ECF No. 16-16; *Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.128; *October 2019 FMLA Request*, ECF No. 16-22; *2019 Reduced Work Schedule*, ECF No. 16-23; *Designation Notice*, ECF No. 16-25; *2020 Reduced Work Schedule*, ECF No. 16-26.) Thus, Plaintiff fails to make a prima facie case for this claim.

---

[2] Defendant also argues, based primarily upon the Sixth Circuit's decision in *Neely v. Benchmark Fam. Servs.*, 640 F. App'x 429, 430 (6th Cir. 2016), that sleep apnea does not constitute a "disability" as that term is used in the ADA. In *Neely*, the Sixth Circuit noted that circuit precedent has consistently held "that sleeping problems . . . getting only 2 to 3 hours of restful sleep per night, falling into micro sleeps during the day . . . snoring, and extreme difficulty breathing while sleeping . . . are insufficient to establish the level of severity required" to be considered a "disability." *Id.* at 434. Because the record reflects that Ace provided Plaintiff with his requested accommodations, the Court need not determine whether, as a matter of law, sleep apnea can be considered a disability.

7

**B.     Retaliation**

Plaintiff also fails to make a prima facie case for his retaliation claim. To establish a claim of retaliation, Plaintiff must show (1) he engaged in protected activity; (2) Ace knew that he engaged in protected activity; (3) Ace took an adverse action against him; and (4) there was a causal connection between the protected activity and adverse action. *Robinson v. MGM Grand Detroit, LLC*, 821 F. Appx 522, 531 (6th Cir. 2020).

In his complaint, Plaintiff alleges that Ace retaliated against him "as a direct result" of Plaintiff's actions in requesting ADA accommodations. (*Complaint*, ECF No. 1, PageID.7.) He further alleges that his "complaints of harassment and discrimination were a significant factor in [Ace's] retaliating against him[.]" (*Id.* at PageID.8.) Despite these allegations, Plaintiff has not provided evidence to show that Ace took any retaliatory actions against him because of his requests for accommodation.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has established only that his work environment during the relevant time period was sometimes unpleasant. Plaintiff's coworkers started rumors about him and falsely accused him of damaging shop tools. (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.132.) Additionally, an employee from human resources told him he should find a new job if he did not like his current job. (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.149.) When asked about these incidents at his deposition, however, Plaintiff was unable to connect these experiences with his requests to Ace for accommodations. (*Ex. 2 Pl. Dep.,* ECF No. 16-3, PageID.122, 132-134.) As Plaintiff has not provided the Court with any evidence to show the required causal connection, his retaliation claim fails with regard to these incidents.

The only other evidence of which the Court is aware that may be perceived by Plaintiff to be evidence of an adverse action is the written warning regarding Ace's attendance policy that was given to Plaintiff in November 2019. (*Written warning*, ECF No. 16-28.) But a written reprimand which is not part of a larger pattern of intimidation and from which no disciplinary action results is not an "adverse employment action" that can be used to support a claim of retaliation. *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013). And Plaintiff testified that the extent of any repercussion for receiving this written warning was that he was made to sign a paper he thought was unfair—he was not fired, demoted, or suspended. (*Ex. 2 Pl. Dep.*, ECF No. 16-3, PageID.141.)

Thus, Plaintiff has not shown that Ace took an adverse action against him as a result of his requests for accommodation.

### IV. Conclusion

Defendant's assertions of fact are well supported and Plaintiff has not rebutted those facts to show a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968)). Accordingly, and for the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

**SO ORDERED**.

        s/ Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: June 3, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 3, 2022, by electronic and/or ordinary mail.

        s/ Lisa Bartlett
        Case Manager